# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RITA NOREK,**

    **Plaintiff,**

    **v.**      Case No. 17-CV-867

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

Rita Norek seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). Since filing this lawsuit, the Social Security Administration found Norek disabled as of December 7, 2016. Thus, Norek requests review of a closed period between her alleged onset date of September 29, 2012 to December 6, 2016. For the reasons stated below, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

Norek filed an application for a period of disability and disability insurance benefits, alleging disability beginning September 29, 2012, due to fibromyalgia, osteoarthritis, brain lesions, memory/cognitive impairment, migraines, severe muscle and tendon cramping and spasms, and severe fatigue. (Tr. 204-05.) A hearing was held before an Administrative Law Judge on November 16, 2015. (Tr. 34.) Norek, represented by counsel, appeared and testified at the hearing, as did Beth A. Hoynik, a vocational expert.

In a written decision issued February 1, 2016, the ALJ found Norek had the severe impairments of fibromyalgia, osteoarthritis, torn meniscus of the right knee, and degenerative disc disease of the lumbar spine. (Tr. 20.) The ALJ further found that Norek did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 22.) The ALJ found Norek had the residual functional capacity ("RFC") to perform light work, except she can only occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs and she cannot climb ladders, ropes, or scaffolds. (*Id.*) The ALJ further limited Norek to only occasional exposure to unprotected heights and precluded her from exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, and extreme heat and cold. (*Id.*)

The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review. (Tr. 1.) On her subsequent re-application for benefits, Norek was approved for benefits beginning June 2017 with an onset date of December 7, 2016. (Docket # 17-1.) Thus, Norek clarified that her appeal is only for the closed period of Norek's alleged onset date of September 29, 2012 to December 6, 2016. (Pl.'s Reply Br. at 1, Docket # 17.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a

decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### *2. Application to this Case*

Norek alleges that the ALJ erred in two ways. First, she argues the ALJ improperly assessed her RFC by failing to account for her nonexertional limitations, specifically her problems with fatigue, memory, and concentration, and failing to include upper extremity limitations. Second, Norek alleges the ALJ improperly weighed the opinions of her treating medical providers, specifically, Dr. John Fahey (a rheumatologist), Dr. Paul Zuzick (a family medicine doctor), and Dr. David Tylicki (a pain management specialist). I will address each argument in turn.

2.1   RFC Assessment

Norek argues the ALJ erred in determining her RFC in two ways. First, she argues the ALJ failed to account for her nonexertional limitations in the RFC, specifically, fatigue and impaired

attention, concentration, and memory. Second, she argues the ALJ failed to include upper extremity limitations in his RFC assessment.

RFC is the most the claimant can do in a work setting "despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1545(a)(1); SSR 96–8p. The Administration must consider all of the claimant's known, medically determinable impairments when assessing RFC. 20 C.F.R. § 404.1545(a)(2), (e). Thus, limitations resulting from non-severe impairments must still be accounted for in an RFC assessment. SSR 96-8p. Norek argues that the ALJ failed to account for her limitations due to fatigue and impaired attention, concentration, and memory in her RFC. Norek argues that her fatigue would likely contribute to time "off task" and absenteeism in excess of what the VE testified would be tolerated by employers; thus, her limitations are work-preclusive.

Regarding Norek's alleged memory issues, the ALJ relied on the September 25, 2013 consultative examination of Dr. Douglas C. Varvil-Weld to discount Norek's allegations. (Tr. 21.) The ALJ correctly cited Dr. Varvil-Weld's finding that a psychometric evaluation of Norek's memory function did not reveal any consistent pattern of deficits involving immediate or short-term memory functioning. (Tr. 579.) However, Dr. Varvil-Weld also opined that intermittently Norek "may have some difficulty with forgetfulness and may have difficulty, at times, remembering certain instructions." (*Id.*) The ALJ stated that Dr. Varvil-Weld's findings regarding Norek's memory function is "in contrast" to Norek and her husband's reports of memory difficulties. (Tr. 21.)

The record, however, does not support the ALJ's conclusion. During Norek's evaluation with Dr. Varvil-Weld, she stated that she had difficulties "finding words" and had intermittent difficulty with forgetfulness involving intermittently poor concentration and lapses of attention. (Tr. 579.) At

-4-

the administrative hearing, Norek testified that at least two days of any given week she had days where her "brain just doesn't quite seem to function," and she will do things such as forget to turn off the stove. (Tr. 61.)

Norek's husband similarly reported that Norek needed to set an alarm to remember to take her medication (Tr. 287) and forgets to pay bills and turn off the lights, stove, and oven (Tr. 289-90). Norek's husband stated that he "get[s] nervous to leave [Norek] home alone when she forgets to turn of[f] stoves, forgets what she's doing and can't remember what she's doing." (Tr. 292.) He reported that Norek can be distracted and inattentive and has difficulty remembering "her intentions, at times." (Tr. 578.)

Further, the medical records note that Norek was having "significant issues at work," including "some memory problems." (Tr. 424.) Her issues were severe enough that her employer advised her to "take a break for a couple of months and if she can not get some of her medical issues in order, which are affecting her job, she will likely lose her job." (*Id.*) Norek specifically noted that her memory was affecting her tasks at work. (*Id.*) In March 2013, Dr. David Cawthon noted Norek was experiencing some memory difficulty, both for short-term and remote items, especially in the past year. (Tr. 485.) Dr. Cawthon opined that the memory difficulties were "perhaps partly due to medications." (*Id.*) Upon mental status examination, Dr. Cawthon noted that Norek was able to remember one out of three objects at three minutes and then the second and third after first letter prompts. (Tr. 486.) Norek was able to get two out of three objects on a "second batch" and the third after first letter prompt. (*Id.*) In April 2015, Dr. Fawad Khan noted that Norek's short-term memory and concentration were "sometimes affected." (Tr. 777.)

The record is clear that Norek was having memory problems, as Dr. Varvil-Weld opined, on at least an intermittent basis. Dr. Varvil-Weld opined that as a result, Norek would have difficulty, at times, remembering certain instructions. (Tr. 579.) The RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a "regular and continuing basis," meaning eight hours a day, five days a week, or an equivalent work schedule. SSR 96-8p. Thus, given the fact this limitation is well supported by the record, the ALJ erred by failing to account for it in Norek's RFC.

As to fatigue, the only mention that ALJ makes of it is with the single statement that records in late 2012 continued to note complaints of fatigue. (Tr. 23.) However, in addition to those late 2012 records, Norek continued to report fatigue throughout the relevant time period. (Tr. 560, 576, 714, 755, 769, 777, 794, 859, 865, 868, 928, 930.) Norek testified that she is eventually overcome by fatigue and "by 3:00 I'm pretty much done for the day." (Tr. 53.) It appears both Norek's obstructive sleep apnea and fibromyalgia contribute to her fatigue (Tr. 402, 561, 777); however, the ALJ did not address either condition with respect to fatigue. Again, Norek's severe fatigue is well supported by the record and the ALJ fails to consider it in assessing her RFC.

Finally, Norek argues the ALJ erred by failing to include upper extremity limitations in his RFC assessment. The record supports Norek experiencing pain, numbness, and weakness in the upper extremities. (Tr. 338, 431, 467-68, 485, 518, 533, 550, 560, 607, 721, 745-46, 826, 885.) Further, Norek's treating physicians, Dr. Fahey and Dr. Zuzick, opined that she cannot use her hands for simple grasping, pushing/pulling arm controls, or fine manipulation for more than five to ten minutes. (Tr. 811, 814.) Although the ALJ assigned little weight to these opinions, he does not address their opinions regarding Norek's upper extremity limitations. Thus, I agree the ALJ erred

in his assessment of Norek's RFC by failing to account for her nonexertional limitations, specifically her problems with fatigue, memory, and concentration, and failing to include upper extremity limitations.

### 2.2 Weight Given to Treating Medical Providers

Norek argues the ALJ improperly weighed the opinions of her treating medical providers, specifically Dr. Fahey, Dr. Zuzick, and Dr. Tylicki. An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. § 404.1527(c)(2). If the opinion of a treating source is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, the opinion is given "controlling weight." *Id.* Even if the ALJ finds that the opinion is not entitled to controlling weight, he may not simply reject it. SSR 96-2p. Rather, if the ALJ finds that a treating source opinion does not meet the standard for controlling weight, he must evaluate the opinion's weight by considering a variety of factors, including the length, nature and extent of the claimant and physician's treatment relationship; the degree to which the opinion is supported by the evidence; the opinion's consistency with the record as a whole; and whether the doctor is a specialist. 20 C.F.R. § 404.1527(c).

The ALJ must always give good reasons for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. The ALJ must give reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. An ALJ can reject a treating physician's opinion only for reasons supported by substantial evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

Norek's treating rheumatologist, Dr. Fahey, submitted a letter opinion dated April 9, 2015, as well as a physical capacities evaluation form. (Tr. 810-11.) Dr. Fahey opined that Norek's condition had not substantially changed since becoming his patient and that even part-time work would greatly increase her symptoms to the point where she could be partially bed ridden within weeks. (Tr. 810.) He opined that Norek was unable to do more than five to ten minutes at a time of light house work, typing, cooking, and self care; was unable to walk at a slow pace for more than five to ten minutes; could walk at a fast pace for less than five minutes; becomes extremely fatigued with more than three hours of activity per day; needs to sit with her leg elevated; is unable to drive more than half an hour twice per week; has extreme skin sensitivity; needs to change position frequently; and cannot sit on a hard surface. (*Id.*) Dr. Fahey opines that she has "brain fog" which on certain days keeps her from retaining new information and sometimes causes her to forget routine tasks. (*Id.*) He opines that the symptoms vary and are worse with heat, extreme cold, and weather changes and are consistent with the diagnosis of fibromyalgia and his examinations. (*Id.*) Dr. Fahey also states that Norek has arthritis in many of her joints and back. (*Id.*)

The ALJ assigns little weight to Dr. Fahey's opinion, stating that the evidence of record did not support limitations of that severity. (Tr. 25.) The ALJ stated that the treatment records frequently noted Norek's normal gait and, in fact, noted improvement in her gait when she walked for longer periods. (*Id.*) In addition, the ALJ considered Norek's "enjoyment of gardening and motorcycle riding," especially "her ability to engage in long car and motorcycle rides" as "inconsistent with the inability to drive more than 30 minutes twice per week or sit without her legs elevated." (*Id.*) The ALJ further discounted Dr. Fahey's opinion on the basis that the record "strongly indicates" the letter was written by Norek and submitted for Dr. Fahey's signature rather than conceived and

written by Dr. Fahey himself. (*Id.*) Also, the ALJ found the letter was written during a period of time when Norek was reporting pain levels of a three out of ten to her physical therapists. (*Id.*)

Norek challenges all of the ALJ's grounds for rejecting Dr. Fahey's opinion. As an initial matter, I do not find it improper for the ALJ to give the letter less weight because it appears Norek wrote the letter herself and Dr. Fahey merely signed off on it. Dr. Fahey communicated to Norek on multiple occasions the fact that he does not "do long narrative disability reports." (700-01.) Norek inquired whether if she wrote it out, Dr. Fahey would be willing to sign off on it. (Tr. 700.) She specifically directed that she was "looking for a narrative to indicate her inability to perform a sedentary occupation based on her education, background and training." (*Id.*) Despite being informed, rather definitely over the telephone by Dr. Fahey himself, that "I do not do long narrative disability reports," (Tr. 701), Norek seemingly convinced him to go against his usual policy. The letter itself, however, contains multiple typographical errors and contains the rather extreme statement that part-time work would render Norek "bed ridden within weeks." (Tr. 810.) This seemingly indicates either Norek did write the letter herself, and/or Dr. Fahey did not spend much time reviewing it.

That being said, the ALJ must still again consider Dr. Fahey's opinion on remand, as he failed to specifically consider Dr. Fahey's opinion regarding her "brain fog," which is consistent with her reports of memory difficulties, and the upper extremity limitations found in the physical capacities evaluation he completed that again, are supported by the record. As to Norek's other arguments, I agree that the ALJ ignores medical evidence that supports Dr. Fahey's conclusion that, for example, she has difficulty sitting on hard surfaces. Norek's physical therapist similarly noted difficulty sitting on hard surfaces. (Tr. 862, 874.) Further, Norek's physical therapist noted that

Norek needed three breaks while riding as a passenger on a motorcycle during a ninety minute ride. (Tr. 897.) Further, although Norek reported to her physical therapist on April 30, 2015 (three weeks after Dr. Fahey's letter is written) that her pain, on that day, was three out of ten (Tr. 902), she also stated that in the last two weeks her pain was, at worst, seven out of ten (*Id.*). The following month, her pain reached between five and seven out of ten. (Tr. 894, 900.) As such, I agree the ALJ erred in considering Dr. Fahey's opinion.

As to her treating family practice doctor, Dr. Zuzick, he authored an opinion dated April 16, 2015 in which he opined that he reviewed Dr. Fahey's letter describing Norek's physical limitations and agreed with them. (Tr. 812.) Dr. Zuzick also completed a physical capacities evaluation form that included upper extremity limitations. (Tr. 814.) The ALJ assigned limited weight to Dr. Zuzick's opinion because he relied on Dr. Fahey's letter, which appeared to be written by Norek herself, and thus, he relied on Norek's subjective functional opinion. (Tr. 25-26.) The ALJ further found Dr. Zuzick's opinion inconsistent with the remaining evidence of record "noted above." (Tr. 26.) Although I agree the fact Norek may have drafted the letter herself renders Dr. Fahey's opinion less reliable, the ALJ fails to otherwise support his rejection of Dr. Zuzick's opinion. This is especially troubling considering Dr. Zuzick does opine, in the physical capacities evaluation, upper extremity limitations, and the ALJ does not address this part of Dr. Zuzick's opinion. Further, as explained above, the record does support Norek's difficulties with memory and sitting on hard surfaces, as Dr. Zuzick opines. (Tr. 812.) For these reasons, Dr. Zuzick's opinion should be reconsidered on remand.

Finally, Dr. Tylicki, Norek's pain management doctor, drafted an opinion dated July 14, 2015 in which he stated that Norek had "multiple medical conditions that are multifactorially accounting for disabling symptoms which more likely will take multiple months to see improvement in her

symptoms." (Tr. 815.) He opined "more likely than not [Norek] will not see appreciable improvement over the next several months . . . [and] will most likely continue to be temporarily be [sic] disabled from appreciable gainful employment." (*Id.*) The ALJ assigned little weight to this opinion because Dr. Tylicki opines regarding the presence of short-term limitations that were expected to last for only months and because his opinion was inconsistent with Norek's reports of a three-day motorcycle trip two weeks later and only moderate pain in June and July 2015. (Tr. 26.)

Norek argues that the ALJ misconstrued Dr. Tylicki's letter. She argues that Dr. Tylicki did not say his limitations would only last months; rather, he said it would take months to see improvement. (Pl.'s Reply Br. at 10.) From my reading of Dr. Tylicki's letter, he says both. Dr. Tylicki does state that it would take multiple months to see improvement in Norek's symptoms; however, he also states that Norek will not see appreciable improvement "over the next several months and while work up and further care is underway[,] will most likely continue to be temporarily . . . disabled . . . ." (Tr. 815.) Thus, a fair reading of the letter is that Norek will only be "temporarily disabled" for the "next several months" while "work up and further care is underway." (*Id.*)

However, the ALJ's citation to Norek's motorcycle trip to discount the opinion is suspect. While Norek does report to her physical therapist in July 2015 that she took a three day motorcycle trip with "fair to good tolerance," (Tr. 865), Norek testified that the "three day trip" consisted of one day traveling to Door County, one day in Door County, and one day traveling back (Tr. 69). She also testified that she could not go more than fifteen or twenty minutes before needing to get off the bike to stretch. (*Id.*) Thus, she was not on a motorcycle for three days straight and she needed frequent breaks. While I find the ALJ should reconsider the opinion on remand, I note that Dr.

Tylicki's opinion is far from solid. It is both unspecific as to how she is disabled and as to what is causing her disability. Further, it could be seen as opining only temporary disability. With better explanation, I would have upheld the assignment of little weight to this opinion. However, for the reasons stated above, I agree the ALJ erred in his assessment of Norek's treating physicians' opinions.

## CONCLUSION

Norek argues the ALJ erred in assessing her RFC by failing to account for her nonexertional limitations and by failing to include upper extremity limitations. She further argues the ALJ improperly weighed the opinions of her treating medical providers, specifically Dr. Fahey, Dr. Zuzick, and Dr. Tylicki. I agree the ALJ erred and must re-examine these issues on remand.

Although Norek requests that this Court award her benefits in lieu of remanding the case, an award of benefits is appropriate only "if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). Here, there are unresolved issues and this is not a case where the "record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Therefore, the case is appropriate for remand pursuant to 42 U.S.C. § 405(g), sentence four.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 3rd day of July, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge